All right, we'll call the third and final case for today, 25-40357, Morgan v. Chapman and Kopasz. All right, no rush, but Mr. Schlafly, whenever you get settled and are ready. Thank you, your honors. May it please the court. My name is Andrew Schlafly and I represent appellant Dr. Courtney Morgan. Dr. Morgan practices family medicine in good standing with multiple state medical boards. He does now. He did at the time the facts of this case began after he completed his family residency, family medicine residency at the University of Miami. He moved to Victoria, Texas, and he opened Hop Medical Services in 2007 to provide affordable care to the community, which was a priority of his. Six years later, he opened a second clinic, which he called Drive-Thru Doc, and that was in early 2013. And then the trouble began. So here's a black doctor new to the community and he opened a second clinic, again, to provide affordable family care, things like rashes, sore throats, he treated sexually transmitted diseases, things like that, not pain management at Drive-Thru Doc. So Drive-Thru Doc, which admittedly has an unusual name, is not treating pain management. Relentless harassment began of this good doctor. The local newspaper saw him as an easy target. The defendants saw him as an easy target. The newspaper did a story on him that was very unfavorable. And it was just factually incorrect and misleading. It was just wrong. It portrayed him as somehow taking advantage of patients. He wasn't. It had all this innuendo, which to an average member of the public, with an unauthorized photo of the black doctor there, the public looked at him and said, wow, here's a black doctor taking advantage of our community. Black doctors are relatively rare, by the way. Only about 5% of physicians are black. And so the newspaper smeared him and then defendants get involved. He's not doing pain management at Drive-Thru Doc. Well, wait a minute. Wait a minute. I understand your version of events. But more factually, there was a newspaper article or a video from a journalist. There were pharmacies that were no longer taking his prescriptions. And there were some, and I think when the journalist drove through or whatever, got meds, never got examined, all that sort of thing. And there are other things that are, I think, what I think I'm thinking of is in Chapman's briefing that gave her the cause to at least think we need to investigate this with the Texas Medical Board, right? And aren't we really looking as regards to Chapman, whether there would be sort of a reasonable belief that there was an investigation warranted or that this needed to be looked into, there were complaints, those kinds of things. I mean, she's not required to prove the fact that this was an unauthorized pain management clinic before going in to investigate. Judge Wilson, I appreciate your comments, but it doesn't do pain management at all. There's nothing in the newspaper article that suggests... I know you say that, but that's not the point. The point is, did she have a basis to believe that that could be something that needed to be investigated? I mean, the case doesn't have to be open and shut before the TMB can go in and investigate. She doesn't, Your Honor. She doesn't. Okay. It's treating rashes. It's not prescribing narcotics. Pain management are for specific narcotics like opioids. It's not prescribing those. And the article makes no mention of pain management. What the article complained about is that this black doctor with an unauthorized picture looks like a mugshot. Very unflattering. She did. Did she also look at his prescription history before the search took place? So she was not basing it solely on the newspaper article, correct? Well... There was a review of prescription history. I don't believe she did an investigation, Your Honor. I don't believe she did. So what evidence do you have to refute the declaration that she did? The state court looked at this. So he was... This doctor was raided, arrested, headlined in a local newspaper, indicted, prosecuted in the state court. State court judge looked at this. He said, it's all below me. Said the Chapman is less than credible. Very harsh in his statements of Chapman in particular. This is not true, what you're doing to this doctor. This is wrong. And he threw the whole thing out. How do you deal with the fact that the summary judgment record now does show that the medical board did in fact institute or pursue administrative proceedings against Morgan? It did. They kept coming after him, Your Honor, without ever doing a fair investigation. But what is the best case, I guess, for finding that an administrative search was pre-textual when the body did in fact wind up instituting or pursuing administrative proceedings? They eventually did, Your Honor, but much later. And it could have just been to just try to... But is there a precedent? Is there any kind of authority that with that factual background, whether it was in fact administrative proceedings pursued, that still found the administrative search to be pre-textual? Do you have any authority? Has that ever happened? I don't have anything exactly on point there, but this case has been to this circuit before. And this court says, if it's not a pain management clinic, then you need a warrant before you go in there and search it. That's what this court said. This court said that several years before the events in question here. This was what, July 2013? Yes, Your Honor. This court has said it wasn't clearly established at that time or before, I guess, what is the case, Zeta, or the other case, I'm forgetting, where we came out and said the subpoenas in Stantor are unconstitutional. So again, back to Judge Willett's question, where is the case or the administrative proceeding, the initial search could nonetheless be pre-textual? You don't need to do a raid of a doctor's office to initiate an administrative proceeding against the doctor. You can request the records form from them. You can do your investigation. The state court, when they reviewed the administrative proceeding, they threw it all out again. So you've unfairly- That's different than the allegations on which your claims are based, which is that the search was pre-textual, didn't have any legitimate reason. And I don't think, Judge Wilson, that it can be justified, the search can be justified by the subsequent administrative proceeding, which was much later. Well, if it wasn't much later, you'd be in court complaining that they didn't cross their Ts and dot their Is before bringing the proceeding. I mean, you can't have it both ways. Again, let's put it this way. There's evidence in the record that details why the proceeding started later. Chapman and others were investigating, were checking things, were checking prescription records, were doing all sorts of things that then led to the case being brought. The administrative proceeding- Well, I mean, how long- Do you have any evidence at summary judgment to contradict it or to suggest that all that was a sham? But the state court, throughout the administrative proceedings- I understand that. So we've got two state courts. I don't want to confuse you, Your Honors. Two separate state courts said this is a sham, what you're doing in this document. This is wrong. Two separate state courts said that. Separate judges, separate counties. So I don't think a raid without a warrant can be justified by the TMB, years later, starting an administrative proceeding to try to justify themselves when, in fact, the state court, after that, looked at it and said, this proceeding was a sham, too. Leave this doctor alone. Putting Kopasz, how do you pronounce the name? Yeah, Kotropia, I think is the same case you're thinking about? No, no, no, no, no, no, no. The party here, Kopasz, Kopasz, whatever. Oh, yeah, Kopasz, yeah. Putting that person aside, what is your best record fact showing that Chapman herself, not just the other person, but Chapman acted solely to gather criminal evidence? Chapman never looked at the total number of patients that Dr. Morgan had. So it's an easy calculation to determine whether something's a pain management clinic. You looked at the number of prescriptions in four categories of four types of drugs, narcotics. That's the other thing Chapman did. Chapman looked at prescriptions in controlled substances. And the magistrate got this wrong, too. The magistrate repeats Chapman's error. Chapman is looking at all controlled substance prescriptions. Well, the universe of controlled substances is much broader than narcotics. What pain management clinics regulate, what that's about, are four specific Schedule II, highly regulated controlled substances, things like opioids. Well, Chapman's including all these controlled, she knows that's wrong. Are you saying... It's improper. Tell me if this is a fair characterization of your argument. Are you saying that once there is a overlap between administrative and criminal investigators, that the administrative search is automatically pretextual? Well, I'm not saying it's automatically pretextual, Judge Weldon, in every case. But in a case where there is no evidence for doing it, particularly drive-thru talk, there were no narcotics prescribed out of that clinic. Why are they raiding it? There's no justification for that. And Cope has testified somewhere in one of his sworn statements that he spent 50% of his time liaisoning with the Texas Medical Board. So he is working with them hand in glove. And they go in and they raid this clinic. Chapman in her declaration says that prior to the raid, I think the case was initially screened by another doctor. And then it was given to her, assigned to her to investigate. During her investigation, and I believe prior to the raid, she obtained prescription history from Department of Public Safety that covered the period between June 25th of 2012 to 2013. And the review of that history included a trend of prescribing opioids, barbiturates, and other items indicated that Morgan was likely operating in unregistered PMC. Why? You said several times that they didn't look at patients. They didn't look at prescription history. But what record evidence do you have to refute what she said in her declaration? The DPS does not include all the patients. So the pain management clinic regulation requires the denominator be all the patients in the practice. Be all the patients. And it has to be more than 50% of all the patients get narcotics for it to be a pain management clinic. And Chapman knows this. She knows this. So by just pulling prescription data from DPS, she's not getting all of his patients. But at some point in time, I recall reading that there was a denominator. It may have been once the records were obtained. And it details like 56% of the patients got opioids. And there's another 20-something percent. I mean, it was well above the majority. But that was based on actual records of actual patients who actually got prescriptions. Am I dreaming that? Yeah, I would say that's a disputed issue of material fact. All right. Well, how do you dispute it? I dispute it. Dr. Morgan has an affidavit in the record where he says he did the analysis and it's not over 50%. But in addition, Chapman only asserted it was over 50% for just one month out of a year. Just one month. Well, the regulation says it's got to be on a monthly basis. And so the state court just said, you've got to be kidding me. You're going to go just on one month? It's got to be on a monthly basis. So even if you take everything Chapman said for face value, and the state court judge said, no, I'm not taking it face value. You're less than pro, said to Chapman. But if you take it at face value, she only did one month out of this. She only found it go, you know, poke above 50% one month out of 12 months. That's not on a monthly basis. And the state court judge said that. And the raid was never justified. Just ask him for the records. Just subpoena him for the records. You don't have to bust in with guns and seize everything. There are patients there, sexually transmitted diseases in those files. They're grabbing all this stuff. They're going beyond the scope of what they need. They're going into drive-through doc that didn't do any pain management prescriptions. That's uncontested. The magistrate judge, she cites that newspaper article five times in her opinion, which she wrote a 29-page opinion without hearing any opposition by Dr. Morgan. She cites that newspaper article five times. Newspaper article says nothing about pain management. It was an ambush where someone got a prescription because Dr. Morgan was out of town. And he did a consultation over the phone, which is allowed. It's called telemedicine. It was within Texas. She's not crossing state lines. He does a consultation over the phone. Okay, you need something? I believe what you're saying. I'm going to give you a non-narcotic prescription. So there's nothing to do with this case. And then you come into the office. As soon as I'm back, I'm going to do a full examination. There's nothing wrong with that. But the clever newspaper article, it portrays the same with the average reader in Victoria, Texas. Oh, this black doctor is taking advantage of our community. What's being done about this? And then they front page the Victorian newspaper. Okay, Mr. Schlafly, we'll see you back on rebuttal. You've got five minutes more. Mr. Patel, take it away. Thank you, Judge Willett, and may it please the court. This case can be viewed through either a procedural lens or a substantive lens. As to procedure, this court could affirm the district court's judgment by applying basic principles of error preservation, which now preclude my friends from challenging any order of the magistrate judge, and at the very least, heighten the standard of review applicable in this court to plain error. As to substance, the district court offered an alternative holding, which perhaps gives this court a more straightforward avenue to affirming the district court's judgment. That is, even if you consider their new evidence, it still isn't enough to show a genuine issue material fact on qualified immunity. Now, we welcome the court to affirm on either ground, but because a procedural resolution offers this court a rare chance to reaffirm a district court's and a magistrate judge's inherent authority to control their own docket, I'd like to then refocus the court's attention on just that. And to do so, I'd like to highlight what exactly is before this court at this time. One is the district court's order accepting the magistrate judge's MNR, and two is the district court's decision not to consider their new evidence under FRCP 72b3. Importantly, nothing else is properly before you today, certainly not the magistrate judge's April 10th order, which denied my friend's motion for leave to file an untimely response to our motions for summary judgment nearly eight months too late. And that's simply because FRCP 72a requires as much. It requires a party to object to a magistrate judge's order within 14 days in the case, quote, a party may not assign as error a defect in the order not timely objected to, close quote. Of course, here there's no dispute that they didn't object to the magistrate judge's April 10th order, or for that matter, any order from the magistrate judge on any nondispositive motion. And that failure now taints their entire case, and it leaves this court with two straightforward questions with straightforward answers. Let me ask you this. Pretext is judged at the time of the search, correct? Correct. So what contemporaneous evidence is there that shows that, I'm just talking about Chapman right now, that Chapman's administrative purpose, what evidence is there contemporaneous with the search when it happened, shows that her, shows her administrative purpose apart from her later declaration? The initiation of the investigation, I know that this is mostly found in the declaration, so, but we have a sworn declaration. The initiation of the investigation was undertaken pursuant to an in-house physician who determined that this complaint that was lodged with the Texas Medical Board actually posed a level one priority threat. So Ms. Chapman wasn't really charged with the initiation of the investigation. I think that's the touchstone of the inquiry here. What exactly called the Texas Medical Board to investigate? And here, there's plenty of things. She looked at the prescription history that was gathered, which showed that Dr. Morgan was perhaps prescribing more. I mean, you rely pretty heavily on the later medical board administrative proceeding, and I just wonder why shouldn't Morgan say, hey, that's just merely post hoc. That can't retroactively sanitize an already pre-textual search. Well, I think it's also important to focus on what exactly they needed to initiate the search. This isn't a probable cause standard. I'm not sure if it's reasonable suspicion either. I think the important question is whether the Texas Medical Board had some internal decision that perhaps showed them, well, we need to investigate this. Their investigation also is not some type of indication of criminality associated with the actual investigation or the conduct that the doctor was doing. And the most important point on this is indeed actually found in the affidavit or the declaration, not from Ms. Chapman, but from Ms. Belinda West, who's a TMB official. And in her affidavit, you can find this Record on Appeal 1468, or actually, apologies, Record on Appeal 1459, where she says that the general purpose of a TMB investigation is to see whether the Texas Medical Board should pursue an administrative proceeding, not to bring criminal charges. And we think that takes care of the pre-text inquiry. Well, how much coordination with a criminal investigator is too much before an administrative inspection stops looking genuinely administrative? So Judge Woolett, during my friend's topside argument, you mentioned substantial overlap, perhaps. I don't think that's the test. I think Zadeh clears it up, where this court said the search must be solely to uncover evidence of criminality in pursuit of a criminal investigation. I realize you were on that panel, but we think that that takes care of that. There is no evidence here whatsoever that Ms. Chapman initiated, or the Texas Medical Board specifically, initiated this investigation solely to uncover evidence of criminality. That's reaffirmed through Ms. West's declaration, where she says that that's not the general purpose of an administrative proceeding. All right, so back to the standard for beginning an investigation, initiating an investigation. You said, well, not sure it's not a probable cause standard, not sure it's reasonable suspicion. What is it? I mean, surely TMB can't just go do this whenever it wants to do it, decides to do it with no ground whatsoever. I mean, in other words, I'm trying to get at what's enough to start an investigation. Sure. Perhaps something less than reasonable suspicion, maybe. I don't know exactly. I don't have a case that I could offer you that tells us what exactly the standard needs to be. Well, how did they know pre-July 2013 that this was an unauthorized pain management clinic? Well, based off the prescription, so there were various informal complaints that were lodged. It's the most important thing here. All right, you've got the newspaper story. Correct. You've got, well, we heard there's some pharmacies not writing the prescriptions anymore, not accepting them. Patient complaints, I can't recall those, whether there were. That was something given to Mr. Kopach, which is not. But the statutes basically say, or I'd say the regulations, whatever combination thereof, it has to be over 50% of these four controlled substances, right? Correct. So how do you know that going in? Well, you look at the prescription history and see what exactly was prescribed. But Chapman didn't have a denominator when she came up with this 46%, 22%, 9%, whatever that initial, those percentages were. And that's exactly why an administrative search or on-site visit became necessary. Well, that's what I'm getting at. How much is enough to give her the ability to go in and do what was done here, which is this sort of raid? It wasn't just an investigation. It wasn't a subpoena, document production. It was a raid. They show up and they start seizing things. So where did that come from in terms of the appropriate suspicion that there was a pain management clinic? I think the touchstone is probably reasonableness. If you look at all of the evidence that they received, it showed pretty clearly that there was some type of reasonable expectation that if we do pursue an administrative search. All right. But is reasonableness, that sounds like it defeats summary judgment. I don't, well, it doesn't go to the merits. So I think that's a separate question. The question for this court is not whether the initiation of the search was reasonable. It's whether or not these defendants are entitled to qualified immunity. Well, I understand that, but I mean, I guess if there's a debate over whether the investigation, the original raid, I'll call it, is reasonable or not, then how do we know if qualified immunity applies? I mean, isn't there a tribal issue there? No, because we still need to assess what exactly these officials knew at the time of the context. So we're not looking at what exactly the Texas Medical Board looked at in the investigation and whatnot. We are, as far as we're considering the reasonableness of the investigation. But the relevant question on qualified immunity here is whether every reasonable official in Ms. Chapman's shoes would have known that what was going on or what she was investigating would have constituted a later constitutional violation. That's the relevant question. Your friend on the other side said that the list from the Department of Public Safety was not a full list of patients. And so that wasn't sufficient to give them an idea of how many people were being, or what percentage of people were being prescribed opioids. I don't know whether or not it was a full list. If it helps, I think one thing that I could perhaps offer here is that this goes to the constitutionality of the Fourth Amendment search claim against Ms. Chapman. And if that's the case, we're still, I think the point here then is clearly established law still applies. There was no clearly established law at the time of the on-site visit here. Katropia from this court reaffirms that. We're essentially reaffirmed that in Zadeh, this court, 2019 was when Zadeh was decided. This court essentially said, well, only now in 2019 are we finally establishing this as a constitutional violation. So that, I think, resolves the Fourth Amendment search claim against Ms. Chapman. I think that's what Your Honor's question is going to. And Katropia says that as well. In Katropia, the conduct occurred in 2015. And this court applied Zadeh's clearly established law holding to that. So I think that takes care of the, perhaps, constitutional violation. We're not arguing here that the execution of the incident or subpoena was unconstitutional. Zadeh says it is. It's not something that, I think, we're not asking this court to revisit that decision. Instead, what we're asking is just to hold that this wasn't clearly established at the time. So what is the lawful administrative purpose for a criminal investigator to participate in serving in standard subpoena and then using the resulting file to bring criminal charges? I'm not sure what Sorry. Could you repeat the question? How could Topaz use the subpoena that Chapman served and being present there as the basis for a criminal investigation? So I don't think he used the case file as the basis for his criminal investigation. He had a criminal investigation that was ongoing. Well, not ongoing, but it was separate. He had initiated some type of informal investigation. He received his own various informal complaints. Some of them overlap with what exactly they received. It relates to the newspaper article and the various news coverage stories. Topaz was already conducting a controlled substances investigation. Tell me if any of this is wrong. So Topaz was already conducting this investigation, contacted Chapman beforehand, and then requested the medical board file afterward. Is any of that wrong? So he didn't contact Ms. Chapman. Ms. Chapman contacted him, I believe, and asked if he had his own investigation or something like that. And then I think what happened was she asked him if he would assist with the actual on-site search. And it wasn't just him, importantly. There were various other law enforcement officers on the scene at that day. Importantly for Mr. Kopacz, though, I think what might help is to tailor the analysis to what exactly is being asserted. There are four claims here. Two of them are against Mr. Kopacz. Two of them are against Ms. Chapman. Fourth Amendment search claim against Mr. Kopacz. Fourth Amendment seizure claim, they tailored it as something akin to malicious prosecution, which I'm not sure what that means. But as to Ms. Chapman, there's a Fourth Amendment search claim, which we've resolved that Zadeh takes care of that. And then a 14th Amendment fabrication of evidence claim. So I think Your Honor's question goes to the Fourth Amendment search claim against Mr. Kopacz. Well, there's no constitutional violation there because he never participated. Importantly, he never participated in the on-site search. His testimony confirms that. I'd point the court to a record on Appeal 1066. 1052 to 53, where he unequivocally testifies he had no role in actually executing the subpoena here. More importantly, the clearly established law in this context actually weighs in our favor. Point the court to this court's decision from McKalick against Herman, for example. This court said, this is the most analogous context I could find to the warrant context. This court essentially said, only an officer who helped prepare a warrant may be held liable. Here, we have unequivocal testimony that Mr. Kopacz was not involved in the actual preparation of this warrant. No, but he shows up. He's got a weapon, right? He does have a weapon. I mean, wouldn't it have been better for him to stay out of it, especially if he was already investigating Dr. Morgan as well? No, I don't think so, because the text, well, I think Your Honor's question is going to why exactly was he there. Well, I mean, it just, you got to concede it's not a good look. He's showing up, and then suddenly there's a criminal charges and all that that grow out of the same visit. Well, I mean, overlap between an administrative search and a criminal investigation are not necessarily indicators of pretext. We know that based off Zadeh, and we also know that based off the New York v. Berger court's own analysis, where the court said, and I quote, the court said, a state can address a major social problem both by way of an administrative scheme and through penal sanctions. I mean, that's effectively what's required in this kind of medically highly regulated. But even if we, even if Chapman, say we spot Chapman administrative purpose, Chapman had administrative purposes. Why doesn't the record still permit a jury to draw this reasonable inference that that Kopacz piggybacked on that process for a criminal investigative end? Because he wasn't involved in the search, first and foremost. I think that's what the record says. How do you define involved? Well, because we know that the Texas, so I think the most important point here, the touchstone is what exactly initiated the investigation. That was solely the prerogative of the Texas Medical Board. They didn't rely on his offense reports. They didn't rely on anything he offered them. They had their own separate internal investigation pursuant to an in-house physician who concluded that the complaint was a level one priority, importantly. But the Medical Board process was being used to obtain evidence that otherwise Kopacz would have needed a warrant to get, right? Perhaps. I'm not sure what other avenue he could have done it through. It still doesn't really affect the Fourth Amendment claim, though, against him specifically, because it still requires some type of role from him. And going then, I think, to the seizure claim, they've argued that the seizure- Well, before you leave the search claim, what's your best case showing that even though he was there, even though he had a weapon, and I mean, he was at least present, that shows that's not participating in the search? I don't think I have a case that says that because it necessarily, if he was involved in the search, I'm sure there's a case that says that's involvement. Importantly, though, his own testimony says he wasn't involved. But he was there. He can say he wasn't involved all day. He was observing everything. He could see what was going on. What's your case that says, nonetheless, the plaintiff can't bring an unreasonable search claim against him? I don't have a case on that off the top of my head. What might help is perhaps Ms. Chapman's own testimony where she says he was there just to support. I think there has to be some type of real involvement to really even get to that point where- Well, but I mean, you're using these terms, real involvement. It's not enough to be present, but you can't give me a case that says that's right. And then you've got one defendant saying, well, he didn't do anything, and I got the subpoenas, TMB did. But I mean, again, can the jury not draw the inference, well, we think he was there to fence his criminal investigation and basically look what happened, criminal charges. Well, I think the most important point that I could offer on this is that it's their burden at this. Well, they haven't shown a genuine issue of material fact on this. That's the most important thing, I think, that goes to that exact question. It's their burden once we filed a motion for summary judgment. It's their burden to respond to that summary judgment with some kind of record citation or some kind of facts that show that there's a genuine issue of material fact on that question. Well, they haven't done that here. And so that, I think, is probably the most important point on that specific question. And I'd also just like to focus on why exactly he was there. I mean, the Texas Medical Board has internal policies that govern even on-site searches. And in Belinda West's declaration, for example, there are portions of it that discuss why exactly law enforcement is usually assisting the Texas Medical Board in investigating these kinds of complaints. And Ms. Chapman even confirmed that in her own declaration, where she said that in prior experience, she's seen various weapons, dangerous items, and things of that nature at these clinics that she's searching. That's why Mr. Kopacz was there. It's not that he was there to conduct his own search. It's not that he was there to help with the search. It's not that he had any role in the search. Importantly, the sole question is why exactly the Texas Medical Board was investigating him. That goes to the Fourth Amendment search. So your position is that there may be a case where law enforcement's there, and it's pretextual or they're sort of piggybacking, to use Judge Willett's term, on the administrative process, but the plaintiff would still have to evidence showing that it was pretextual, that it led to the criminal investigation, or that that security wasn't really why the law enforcement was there. That's exactly right. They need to establish a genuine... We have established that there is no genuine issue of material fact. At that point, they need to establish that there is a genuine issue of material fact. They haven't carried that burden here. And I'd like to remind the Court that the standard of review here is fairly stringent. It's plain error. They haven't responded. Their objections were never properly filed. That requires this Court to review the district court's order accepting the matter. Should the pretext analysis be the same for both Chapman and Kopasz? I'm out of time. Go ahead. I think it should be. They necessarily, I think, overlap because most of their allegations and their complaint plead facts that are necessarily done. I know I'm keeping you beyond the red light, but what would evidence of a purely pretextual administrative search be? What would it look like for a search to be conducted solely to uncover evidence of criminality? I think it contemplates more involvement from law enforcement officials than what we have here. It at the very least requires law enforcement officers participate, perhaps even help prepare the subpoena that initiates the actual on-site search. I think that's what probably is most important in that kind of situation. That's also what's lacking here. And at the very least, that's the kind of showing that someone would have to probably make to establish a genuine fact issue on qualified immunity or specifically on pretext. Final question. How could Kopasz's criminal investigation, how could it be entirely separate, stand alone, if it relied on the medical board's report? Well, importantly, he's not the one charged with prosecuting or pursuing a criminal charge against Dr. Morgan. That would be the Victoria County District Attorney. I don't, I mean, there would have to be necessarily some overlap between the actual. Because, you know, Chapman's brief describes how Kopasz requested the medical board's records to pursue a criminal investigation. The magistrate likewise described Kopasz kind of reaching out to Chapman before the search to discuss reports about the clinic. Kopasz requested the investigative file, and the magistrate kind of described all this, how the file was being used to bring criminal charges. Well, it's because he had his own informal investigation. It was entirely separate. Necessarily in these kinds of, I think with this kind of criminal charge, there is some type of regulated scheme that underlies it. And with that being the case, you would have to probably get some type of information from the administrative agency that has conducted its own investigation into the criminal conduct. They're charging, the charge is a violation of the Texas Medical Practice Act. And the Texas Medical Board, better than anyone else, the administrative agency charged with prosecuting or charging, essentially enforcing that statute, would know better than law enforcement agencies that are in charge with enforcing it. Mr. Patel, thank you very much. We appreciate it. Mr. Schlafly, you're back with the final five minutes of the day. Thank you, Your Honors. First, to just clarify, it's de novo review by this court on an appeal from a grand summary judgment. That's de novo review. Now, opposing counsel is saying that it's an abuse of discretion review in terms of excluding evidence. Well, there's a lot of case law that says if you exclude all the evidence, then a very slight abuse of discretion is enough to justify a reversal. You cannot exclude all the evidence on a motion of summary judgment without... Well, but that's a little bit disingenuous as to what happened here. The reason the evidence is excluded is because the plaintiff didn't file a timely response. The magistrate judge disallowed it. The district court basically said, I'm not considering the evidence you would have attached. So it's not exactly like the district court just excluded evidence that was somehow newly discovered. Plaintiff failed to respond to the summary judgment. Your Honor, I understand why you say that. I respectfully submit that there was a misunderstanding that Judge Tipton repeatedly told counsel for Dr. Morgan, you can set the schedule. You can... We'll give you time. We'll hold this in advance. Repeatedly, Judge Tipton said that to counsel for Dr. Morgan. Then Judge Tipton referred the case to the magistrate, and the magistrate admitted. When it gets referred, schedules get reset, deadlines get reset. But she said because this deadline had already lapsed, in her opinion, she went ahead and wrote a 29-page opinion with that in the opposition by Dr. Morgan. Now... That wasn't the first motion that she granted as unopposed, was it? That's right. So why didn't the first motion give notice of there being a reason to question if your understanding of the scheduling order being in abedance still held true? Right, Your Honor. Because the first motion, she did set a hearing on it, and then she canceled the hearing. But that motion was just a minor procedural thing. It had to do with experts and so on taking judicial notice. So... And I would submit that there's a categorical difference between sort of discovery motions and taking judicial notice and things like that, and a summary judgment motion. Well, but what did plaintiff do to verify when the deadline was? Plaintiff relied on what Judge Tipton had told her, and she checked with opposing counsel. What did plaintiff do to verify that the court's various scheduling orders didn't restart, or that the summary judgment motions were held in abeyance, or I think you called it, you know, wiped clean, or basically dead let, or something like that. Right. What did plaintiff do to verify that? She relied on what Judge Tipton had told her, and she checked with opposing counsel, and opposing counsel said, you're right. So as a practicing attorney, there's some confusion, there's some uncertainty, and you check with opposing counsel. If there's confusion, though, I mean, we have cases all the time where there's, somebody's confused, somebody misses a deadline, somebody miscalendered a deadline, and we say no abuse of discretion for declining to entertain a response that's untimely. And I understand that, Judge Wilson, for most motions. I understand that completely. Everybody understands. Did you challenge the magistrate judge's ruling, declining to allow the untimely response to summary judgment, did you appeal that to the first we asked the magistrate to accept the new evidence. No. We asked Judge Tipton. So we asked him. Did you challenge the magistrate judge's ruling, declining to allow the untimely summary judgment response, did you appeal that to the district court? No. Instead, we asked Judge Tipton to allow the evidence. So the way Rule 72 works is the judge has the authority to allow the evidence. Has full authority. There's nothing preventing him from doing it. So that's the easier way to do it, rather than ask the judge to reverse what the magistrate judge did. We just asked him directly, will you accept the evidence, which he's allowed to do. And he excluded all of them. He's allowed to do it, perhaps, but he's not required to do it. I mean, again, it's an abuse of discretion. Respectfully, Your Honor, on a summary judgment motion that's dispositive to the case, it's like a trial, basically. They're not supposed to be entered by default. I could not find that. They're not doing case. See, counsel, I got to say, your briefing goes on and on and on about this. You call it a procedural quirk. You just say something about, well, the rules don't countenance, you know, not reaching the merits. No, the rules are there to be followed. And I don't see anything in your briefing or in the record that shows where the plaintiff actually diligently tried to follow the rules or challenge the magistrate judge's rulings first that said, you didn't do this, and I'm not going to allow it. And then the district court basically did the same thing. I mean, I'm just not sure what we're supposed to do with that. But I mean, it's not enough for me, anyway, to hear you say that, well, you're not supposed to do this by default. That's not at all what happened here. Your Honor, I could not find a single case where anyone had issued a 29-page summary judgment decision without hearing from the other side and not allowing evidence by the other side. I found numerous cases, which I put in my brief, where when something similar to that is done, it gets reversed. Because the federal rules facilitate solving things on the merits. I'm sorry. I'm sorry. Did you ask the magistrate judge to reconsider the magistrate judge's order disallowing the untimely summary judgment responses? No. Instead, we asked the judge to allow the evidence directly, which is a lower standard. I mean, it's easier for him to do that. So it would be, for him to overturn the magistrate judge's order, she didn't do it as a recommendation. She did it as an order. That would be another abuse of discretion standard, which is basically a harder way to do that. We just asked Judge Tipton to allow the evidence himself. The other side did not come with any case that upholds what was done procedurally. And it would be like holding a trial where one side doesn't show up. And then you hold the trial. You have a couple day trial. The other side's not there. Anything else? Judge Wilson? If I could just add one thing. In the prior appeal of this case, it said, this court said, because Morgan was not operating a paid management clinic, the qualified immunity available to the defendants in Zeta would be inapplicable here. So opposing counsel argued that they're entitled to qualified immunity. And no, that's not what this court held. Because Morgan was not operating a paid management clinic, there's no qualified immunity. Okay. Mr. Schlafly, thank you very much. Thanks to both sides. The case is submitted and we will stand adjourned until 1 p.m.